UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DR. KUBA O. ASSEGAI,<br>    Plaintiff,<br><br>v.<br><br>BLOOMFIELD BOARD OF<br>EDUCATION, BLOOMFIELD POLICE<br>DEPARTMENT, PAUL COPES,<br>RICHARD MULHALL, CINDY LLOYD,<br>ERIC COLEMAN, and<br>MATTHEW BORRELLI,<br>    Defendants. | :<br>:<br>:<br>:    CIVIL ACTION NO.<br>:    3:01 CV 1304 (SRU)<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, Kuba O. Assegai ("Assegai"), has brought this suit claiming that the defendants unlawfully conspired to arrest him pursuant to a warrant procured using false evidence, that his arrest was effected without probable cause, and that the arrest was motivated by Assegai's exercise of his First Amendment rights. The defendants, the Bloomfield Board of Education ("Board of Education"); the Bloomfield Police Department ("Police Department"); Richard Mulhall ("Chief Mulhall"), former police chief of the Bloomfield Police Department; Cindy Lloyd ("Detective Lloyd"), a Bloomfield police detective; Paul Copes ("Copes"), former Superintendent of Bloomfield schools; and Eric Coleman ("Attorney Coleman"), a former town attorney for the Town of Bloomfield, have moved for summary judgment. For the reasons set forth below, the defendants' motions for summary judgment are granted.[1]

---

[1] In addition, defendants moved to strike several affidavits attached to Assegai's opposition to defendants' motion for summary judgment. Because, even with those affidavits before the court, defendants are entitled to summary judgment, there is no need to reach the merits of defendants' motion to strike.

**I. Background**[2]

At all times relevant, Assegai had school-aged children attending the Bloomfield Public Schools. In the beginning of the 1997-1998 academic year, Assegai visited the Bloomfield schools that his children attended to discuss his children's education with their teachers and to express his dissatisfaction with the school administration. During these visits to the schools, Assegai became involved in several confrontations with faculty, administrators, and students, who found his comments and behavior offensive. A number of the people who dealt with Assegai or who witnessed the confrontations submitted sworn affidavits detailing their encounters with Assegai. Although none of the affiants stated that Assegai was violent, they did state that he often raised his voice and made disparaging remarks about the school, students, and the educational system.

After receiving a number of complaints and documenting various incidents involving Assegai, school officials consulted with Attorney Coleman, then the town attorney for Bloomfield. Around October 1997, Coleman filed, on behalf of the Bloomfield Board of Education, a request that the Connecticut Superior Court enter a restraining order against Assegai. On or about October 22, 1997, Judge Norris L. O'Neill of the Connecticut Superior Court granted a temporary restraining order prohibiting Assegai from entering the Bloomfield public schools. The terms of the order were modified from the bench on November 17, 1997 to allow Assegai limited access to Bloomfield schools. After a hearing in January 1998, the terms of the restraining order were again modified by an order dated February 5, 1998. The restraining

---

[2] Because this is a summary judgment motion, the facts are construed in the light most favorable to the non-moving party and all ambiguities are resolved and inferences drawn against the moving party. Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 168 (D. Conn. 2003).

order was to remain final, and Assegai was to adhere to the order, unless his attorney moved to change the conditions or dismiss the injunction altogether. Assegai's attorney did not appear at the January 1998 hearing, did not make any objection to the modified order, and never requested that the injunction be terminated.

Under the terms of the February 5, 1998 order, Assegai was allowed to transport his children to and from school, and Assegai was permitted to enter the Bloomfield public schools if he provided the superintendent and the principal of the school with notice. If Assegai provided the appropriate notice to school administrators and made a request to visit the school, arrangements were to be made to accommodate such a visit.

During March and April 1998, several school officials and teachers witnessed Assegai enter at least one of the Bloomfield public schools. A few of the teachers had discussions with Assegai regarding his children's progress and education. There is nothing to show that Assegai made prior arrangements for these visits. After the witnesses told Copes about Assegai's conduct, apparently in violation of the restraining order, the matter was referred to the police for investigation. Detective Lloyd was assigned to investigate the case.

After conducting her investigation, Detective Lloyd sought an arrest warrant for Assegai, citing his apparent violations of the restraining order. The statements taken from witnesses interviewed by Detective Lloyd were attached to the arrest warrant application. Detective Lloyd requested an arrest warrant for two violations of the Connecticut criminal statutes for each of the seven times that Assegai was seen by witnesses visiting the Bloomfield schools without prior notice. The warrant application was reviewed and approved by a prosecutor and signed by a judge of the Connecticut Superior Court.

Assegai was arrested on April 22, 1998. He thereafter appeared in Connecticut Superior Court, G.A. No.16 in West Hartford and G.A. No.14 in Hartford, and was held originally on $1,000 bond, which was subsequently increased to $50,000. The charges against Assegai were nolled on June 30, 2000, and subsequently dismissed by operation of law.

This lawsuit was filed on July 10, 2001. Assegai makes various broad claims that appear to be brought primarily under 42 U.S.C. § 1983 ("Section 1983") and state law. Among these claims, Assegai alleges that the actions taken by Bloomfield public school officials and Bloomfield police officers culminated in a conspiracy designed to deprive him of his right to free speech. Assegai maintains that the filing of the application for a restraining order, his subsequent arrest, and his arraignment on criminal trespass charges constituted false arrest and imprisonment. In addition, Assegai alleges that the charges brought against him, which were later nolled and eventually dismissed, constituted malicious prosecution. As a result of the actions of the alleged conspiracy, Assegai claims that he has suffered damages, including severe emotional distress.

## II. Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; Celotex v. Catrett, 477 U.S. 317, 322 (1985) (citation omitted). The burden is on the moving party to establish that there is no genuine issue as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1985).

The burden on the moving party "may be discharged by 'showing' … that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325.  Once this burden has been met, "the burden shifts to the non-moving party to raise triable issues of fact." Larson v. The Prudential Insurance Company of America, 151 F. Supp. 2d 167, 171 (D. Conn. 2001).  If the non-moving party then fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment should be granted.  Celotex, 477 U.S. at 322.

**III. Discussion**

    **A. Statute of Limitations**

Assegai asserts that all of the actions taken by the defendants comprised a conspiracy, which was responsible for the deprivation of his constitutional rights, his eventual arrest and the criminal charges lodged against him.  Assegai argues that the defendants' actions and the resulting harm should be considered collectively when determining the date on which his claim has accrued.  He contends, therefore, that the statute of limitations for all of the defendants' prior actions, beginning with the 1997 application for a temporary restraining order, did not begin to run until the charges against him were nolled in June 2000.  The defendants contend that Assegai's claims accrued when he became aware of the injuries that he claims to have suffered, and that the three-year statute of limitations bars all of these claims.

    Section 1983 does not provide a statute of limitations or any guidance for determining when a cause of action accrues.  Leon v. Murphy, 988 F.2d 303 (2d Cir. 1993).  To determine the applicable period of limitation for a claim brought under Section 1983, the court must look to the statute of limitations provided by analogous state law causes of action.  Moffitt v. Town of

Brookfield, 759 F. Supp. 94, 95 (1991). Connecticut provides a three-year statute of limitations for claims sounding in tort. Conn. Gen. Stat. § 52-577. The statute of limitations for tort claims is "the most expansive of all the statutes of limitations applicable to personal injury claims in Connecticut." Napolean v. Zerox, 671 F. Supp. 908, 911 (D. Conn. 1987). The three-year statute of limitations gives a plaintiff ample opportunity to reflect and probe. Id.

In a federal court case, the time of accrual is determined by federal law. Claims brought under Section 1983 accrue when the plaintiff "knows or has reason to know of the injury which is the basis of [the] action." Golino v. City of New Haven, 761 F. Supp. 962, 965 (D. Conn. 1991).

Assegai does not disagree with this statement of the law. Rather, he argues that none of his causes of action accrued until the conspiracy against him was complete, namely, when the criminal prosecution was nolled in 2000. He is incorrect. Even though a plaintiff asserts that he has been harmed by a conspiracy, the accrual of causes of action arising out the of the conspirators' separate wrongs is not postponed. Golino, 761 F. Supp. at 965. The tortious act itself, and not the conspiracy, establishes the point of accrual. Id. "To permit [a plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar.'" Id. at 966 (quoting Singleton, 632 F.2d 185, 192 (2d Cir. 1980)).

Accordingly the court must look to the specific wrongs complained of to determine the date each cause of action accrued. All of Assegai's claims relate to the following actions: (1) the1997 temporary restraining order, (2) the modification of that order in 1998, (3) Assegai's arrest in April 1998, and (4) the June 2000 nolle of the charges pending against him.

Assegai is correct that his claim of malicious prosecution is timely. This has nothing to do with the date on which the alleged conspiracy ended, but is simply because the statute of limitation for a malicious prosecution claim starts to run only when the underlying criminal action is conclusively terminated. Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995). The charges against Assegai were nolled in June 2000. Because this suit was filed in June 2001, approximately a year after that dismissal, the statute of limitations does not bar Count Three of the Complaint.

All of the other wrongful actions allegedly done to Assegai had occurred by, at the latest, April 1998 – the date of his arrest. Therefore, Assegai's claims relating to the deprivation of his First Amendment rights, false arrest and false imprisonment had accrued by April 1998 and, since Assegai's complaint was not filed until July of 2001, are barred by the three-year statute of limitations.

Because the statute of limitations bars all of Assegai's federal claims related to the restraining order and the arrest, the defendants' motions for summary judgment are granted as to Counts One, Two, Four, and Six (except as Count Six relates to defendant Matthew Borrelli, discussed below).

**B. Malicious Prosecution**

Assegai contends that the defendants conspired against him to deprive him of his constitutional rights by maliciously prosecuting him on charges of criminal trespass and violations of a restraining order. He further claims that a nolle of the charges was a sufficient disposition in his favor to allow him to state a claim for malicious prosecution. The defendants contend that the nolle of June 30, 2000 was merely a qualified dismissal of the charges against him and not a conclusive determination as to his guilt or innocence. Therefore, the defendants

maintain that summary judgment should be granted for Count Three because Assegai has failed to state a claim for malicious prosecution.

Courts in the Second Circuit have consistently held that "in order to prevail on a cause of action for false arrest or malicious prosecution, a plaintiff must prove that the underlying criminal proceeding terminated in his favor." Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171 (D. Conn. 2003). The plaintiff has the burden of proving that the state prosecution ended in his or her favor. Singleton v. City of New York, 632 F.2d 185,193 (1980). Proceedings are "terminated in favor of the accused" only when their final disposition is such as to indicate the accused is not guilty. Id. In fact, a person "who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." Roesch v. Otarola, 980 F.2d 850, 853 (2d Cir. 1992).

A nolle is not a final disposition in the plaintiff's favor for the purposes of a malicious prosecution claim. "An adjournment in contemplation of dismissal, like a consent decree, involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt." Singleton, 632 F.2d at 193. A nolle is simply a statement by the prosecution that it will not be pursuing the case at this time; it does not foreclose the possibility that, if prosecuted, the plaintiff would have been found guilty.

Because Assegai consented to have the criminal charges against him nolled, he forfeited his right to later bring a claim for malicious prosecution. The nolle entered on June 30, 2000 was not a sufficient disposition in favor of Assegai to allow him to state a claim for malicious prosecution. Therefore, the defendants' motion for summary judgment on Count Three is granted.

8

### C. Defendant Borrelli

On or about March 31, 2002, Assegai amended his complaint to add a claim that Matthew Borrelli had retaliated against him for filing this lawsuit by mistreating Assegai's wife and daughter. Assegai contends that Borrelli unreasonably suspended his daughter after she was involved in an altercation with another student. Furthermore, Assegai maintains that when his wife went to speak with school officials about ending her daughter's suspension, her requests were unfairly denied. Assegai brings this claim under 42 U.S.C. § 1985, asserting that Borrelli, through his treatment of Assegai's wife and daughter, retaliated against Assegai and attempted to intimidate Assegai and his family to prevent him from going forward with this suit.

After amending his complaint with no apparent purpose other than to add Borrelli as a defendant, Assegai neglected to serve Borrelli with a summons and complaint. This defect was raised by the other defendants in their answer to the amended complaint, filed on October 2, 2002, and again in their motions for summary judgment. Despite receiving this notice, Assegai declined either to serve Borrelli or to petition the court for an extension of time in which to do so.

It is now seventeen months since Assegai was made aware of this defect (assuming he received no notice prior to the other defendants' answer), and almost two years since the filing of the amended complaint that named Borrelli. Assegai is well beyond the 120-day time limit for service of process set forth by Federal Rule of Civil Procedure 4(m). In accordance with that rule, all of the Complaint's claims against Borrelli are dismissed.

**D. State Law Claims**

To the extent Assegai's complaint asserts state common law causes of action, I decline to exercise supplemental jurisdiction over them, since no federal claims remain. See <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715 (1996). All Assegai's state law claims, including Count Five, are therefore dismissed without prejudice.

**IV. Conclusion**

For the foregoing reasons, the defendants' motions for summary judgment (docs. # 41 & 44) are GRANTED. In addition, all claims against defendant Borrelli and all state law claims are DISMISSED without prejudice. The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut this 4th day of March 2004.

        /s/ Stefan R. Underhill
        Stefan R. Underhill
        United States District Judge